UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LEE FALICIA, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:02CV02463 (RBW) |
| | ) | |
| ADVANCED TENANT SERVICES, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Currently before the Court is a Motion to Quash Subpoena for Production of Documents submitted by Dixie Dale, LLC ("Dixie Dale") ("Dixie Dale's Mot. to Quash") [D.E. #71] and a Motion to Quash Subpoena for Production of Documents submitted by Single Point Construction, LLC ("Single Point") ("Single Point's Mot. to Quash") [D.E. #72].[1] Both motions request that the Court grant a protective order quashing the plaintiffs' subpoena which compels Wachovia N.A. ("Wachovia") to produce for inspection, inter alia, all documents and records that are in its possession concerning Dixie Dale and Single Point from September 1, 2004 to the date of the issuance of the subpoena. For the reasons set forth below, the Court will grant both motions.

### **I. Background**

The plaintiffs initially brought this action against Advanced Tenant Services ("Advanced Tenant") and James Douglas, Sr., to recover unpaid back wages pursuant to the Federal Fair

---

[1] Dixie Dale and Single Point submitted separate identical motions, however, the plaintiffs responded to both in a single pleading. Dixie Dale and Single Point also responded to the plaintiffs' opposition in a single filing. Accordingly, the Court will address both motions in a single opinion.

Labor Standards Act ("FLSA"), as amended by 29 U.S.C. §§ 201 et seq. (2000), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. (1999).  Second Amended Complaint ("Am. Compl.") at 1.  At the conclusion of a jury trial on November 10, 2004, judgment was entered in favor of the plaintiffs in the amount of $324,143.36.  See Judgment on the Verdict.  Subsequently, on motion of the plaintiffs, the Court awarded attorney's fees and expenses to the plaintiffs in the amount of $84,585.85.  Falicia v. Advanced Tenant Services Inc., 384 F. Supp. 2d 75, 83 (D.D.C. 2005).  The Court also awarded the plaintiff liquidated damages in the amount of $60,726.84.  See June 28, 2005 Order Granting Liquidated Damages.

The plaintiffs, in seeking to enforce their judgment against the defendants, served a subpoena on Wachovia for the production of "[a]ll documents, including but not limited to:  bank statements, cancelled checks and bank forms, related to: . . . Single Point Construction LLC [and] Dixie Dale LLC . . . for the time period September 1st, 2004 to the present."[2]  Dixie Dale's Mot. to Quash, Exhibit ("Ex.") A at 2.  The subpoena also seeks "[a]ll correspondence to and from, and any other communications between Wachovia and . . . Single Point Construction LLC [and] Dixie Dale LLC . . . for the time period September 1st, 2004 to the present."  Id.  The plaintiffs oppose Dixie Dale's and Single Point's motions to quash the subpoena arguing that they are entitled to use "all discovery methods available to them under the Federal Rules . . ." of Civil Procedure and that their subpoena is a proper method to employ in attempting to enforce their judgment.  See Plaintiffs' Opposition to Defendants' Motion to Quash Subpoenas ("Pls.' Opp'n") at 4.

---

[2] The subpoena also encompassed the two named defendants.

## II. Standard of Review

Federal Rule of Civil Procedure 45 governs the circumstances under which a subpoena may be quashed by a court. The rule states, in pertinent part, that "a court may quash or modify a subpoena if it requires disclosure of a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i). In determining whether information is protected by Rule 45, courts must evaluate whether the information being sought is commercial information that should not be disclosed to the public. Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 528 (D. Del. 2002). There are several factors courts consider in making this assessment. First, courts have traditionally evaluated whether release of the information would unfairly harm the disclosing party's ability to compete in the marketplace. Id. at 528-29. If the answer to this question is in the affirmative, the information is protected from disclosure. Id. This result is called for because commercial information can be used to directly compete with the disclosing party or, alternatively, might be disclosed by a competitor to decrease the competitive advantage of the commercial information. Echostar Commc'ns Corp. v. News Corp., Ltd., 180 F.R.D. 391, 395 (D. Colo. 1998). Thus, another relevant factor for a court to consider is who potentially could receive the information. Therefore, courts understandably "presume[] that disclosure to a competitor is more harmful than disclosure to a noncompetitor." Am. Standard Inc. v. Pfizer Inc., 828 F.2d 734, 741 (Fed. Cir. 1987) (citations omitted). If a court determines that the subpoena requests commercial information, the burden shifts to the party seeking the information to show that obtaining the information is both relevant and necessary. Id. at 740-41. If this burden is satisfied, then the court must balance the two competing interests and determine what aspect of the subpoena, if any, will be enforced. Id. at

742.

Federal Rule of Civil Procedure 69 governs the procedure for enforcing a judgment. It allows a "judgment creditor . . . [to] obtain discovery from <u>any</u> person, including the judgment debtor, in the manner provided in [the federal] rules . . . ." Fed. R. Civ. P. 69 (a) (emphasis added). The judgment creditor may therefore utilize the discovery devices provided in Rule 26. <u>Burak v. Scott</u>, 29 F. Supp 775, 776 (D.D.C. 1939). While there is little case law in this Circuit concerning non-party post-judgment discovery, other federal courts have afforded judgment creditors broad opportunities to discover concealed assets of judgment debtors including acquiring such information from non-parties. See e.g. <u>Caisson Corp. v. County West Building Corp.</u>, 62 F.R.D 331, 334 (E.D. Pa. 1974) (holding that discovery of third parties can be conducted to discover concealed assets of the judgment debtor); <u>Magnaleasing, Inc. v. Staten Island Mall</u>, 76 F.R.D. 559, 562-63 (S.D.N.Y. 1977) (permitting discovery where the relationship between the judgment debtor and non-party raised a reasonable doubt as to whether the dealings between the two were conducted in good faith). While judgment creditors cannot typically compel disclosure of assets of non-parties, <u>Burak</u>, 29 F. Supp. at 776., discovery is permissible when the parties are closely related and "reasonable doubts" have been raised concerning "the good faith of the transfer" of assets between the two. See <u>Alpern v. Frishman</u>, 465 A.2d 828, 829 (D.C. 1983).

### III. Analysis

Dixie Dale and Single Point move to quash the subpoena served on Wachovia on several grounds. Dixie Dale's Mot. to Quash at 1-2; Single Point's Mot. to Quash at 1-2. First, they state that neither company is a party to the underlying litigation. Dixie Dale's Mot. to Quash at

1; Single Point's Mot. to Quash at 1.  Next, they assert that neither was provided notice of the issuance of the subpoena.[3]  Dixie Dale's Mot. to Quash at 1; Single Point's Mot. to Quash at 1.  They also claim that the bank records sought are confidential commercial information.  Dixie Dale's Mot. to Quash at 2; Single Point's Mot. to Quash at 2.  On the other hand, the plaintiffs claim that "[i]t is axiomatic that once [they] have been awarded a judgment, they are entitled to take whatever steps are needed to enforce it."  Pls.' Opp'n at 4.  Here, the plaintiffs, in seeking to enforce their judgment, have sought the records of two companies owned by members of the same family that owns Advanced Tenant, the judgment debtor.  Id., Ex. 1-2 (showing that James Douglas, Jr. is the principal of Dixie Dale and Single Point).  In Dixie Dale's and Single Point's responses to the plaintiffs' opposition, they raise new jurisdictional and other notice arguments not raised in their motion.  Responses of Single Point Construction, LLC and Dixie Dale, LLC to Plaintiffs' Opposition To Motion To Quash ("Resp. to Pls.' Opp.") at 1-2.  The Court will address each of these claims below.

### 1. Discovery from Dixie Dale and Single Point as Non-Parties

Single Point and Dixie Dale argue that because they are not parties to this litigation, the plaintiffs are not permitted to subpoena either company's bank records.  Dixie Dale's Mot. to Quash at 1; Single Point's Mot. to Quash at 1.  Both Single Point and Dixie Dale further claim that they are separate entities from the defendants in this action - Advanced Tenant and James Douglas, Sr.  To support this second assertion, they have attached identical affidavits from James

---

[3] Dixie Dale and Single Point both claim in their motions that they were not given sufficient notice of the issuance of the subpoena.  However, neither specify the basis for their positions in their papers and have not submitted any evidence or exhibits that support their claims.  Accordingly, the Court has no basis for according them relief on this ground.

Douglas, Jr., which state that neither Advanced Tenant nor James Douglas, Sr. has any ownership interest in either Single Point or Dixie Dale.  See Dixie Dale's Mot. to Quash, Affidavit of James M. Douglas, Jr. in Support of Dixie Dale, LLC's Motion to Quash Plaintiffs' Subpoena for Production of Documents ("Douglas Aff. in Supp. of Dixie Dale") at ¶5; Single Point's Mot. to Quash, Affidavit of James M. Douglas, Jr. in Support of Single Point Construction, LLC's Motion to Quash Plaintiffs' Subpoena for Production of Documents ("Douglas Aff. in Supp. of Single Point") at ¶5.  Moreover, the affidavit states that James Douglas, Sr. is not a director or member of either company.  Douglas Aff. in Supp. of Dixie Dale at ¶5; Douglass Aff. in Supp. of Single Point at ¶5.  Finally, Single Point and Dixie Dale claim that the plaintiffs have not produced any evidence to support their theory that the two companies are merely "a continuation of the family business," Resp. to Pls.' Opp'n. at 2-3, as alleged by the plaintiffs.

     Single Point and Dixie Dale rely on Burak v. Scott as support for the proposition that their assets are not subject to inspection by the plaintiffs. Id. at 2.  In Burak, a judgment creditor attempted to subpoena multiple individuals claiming that these non-parties could be required to satisfy his judgment.  29 F. Supp at 776.  However, the plaintiff there presented no evidence showing that these non-parties had a relationship with the judgment debtor, or how they could be held responsible for satisfying the judgment.  Id.  Similarly, in Alpern, there was no showing that the judgment debtor had transferred property to his spouse and therefore discovery was not allowed.  465 A.2d at 829.  The Alpern Court noted that if there was even a "slight showing that there had been a transfer of property" from the judgment debtor to the non-party (who were spouses), discovery would have been permitted.  Id.  There, as indicated, the non-party was the

spouse of the judgment debtor and she executed an affidavit denying that her husband had transferred any of his assets to her.  Id.  That was considered sufficient to overcome the suspicion of ensconcing and therefore defeat the discovery request.  Id.  The Alpern Court specifically distinguished the difference between discovering the personal assets of a non-party as compared to discovering a debtor's assets that have been transferred to a non-party.  Id.

This case is distinguishable from both Burak and Alpern for three reasons.  First, contrary to the defendants' position, the plaintiffs have submitted evidence which suggests that Single Point and Dixie Dale are mere extensions of Advanced Tenant, thereby raising colorable suspicion regarding the relationship between Single Point's and Dixie Dale's assets and Advanced Tenant.  Second, the plaintiffs are not seeking the records of personal assets of non-parties, but rather the business records of possible successor entities of a judgment debtor.  Finally, the affidavit provided by James Douglas, Jr. does not specifically state that assets have not been transferred from Advanced Tenant to either Dixie Dale or Single Point.

There is evidence in the record which suggests that Dixie Dale and Single Point were not business pursuits created totally independent from Advanced Tenant.  In fact, their creations appear to be thinly veiled attempts to transfer assets from Advanced Tenant to Dixie Dale and Single Point in order to render Advanced Tenant judgment proof.  In this regard, the plaintiffs provide several examples that suggest that Dixie Dale and Single Point have essentially stepped into the shoes of Advanced Tenant.  First, both Dixie Dale and Single Point came into existence on the day the verdict in this case was returned against Advanced Tenant.  Pls.' Opp'n at 2, Ex. 1-2.  Moreover, the companies are all still controlled by immediate members of the same family, although not by the same individuals.  Id. at 5.  The affidavit of James Douglas, Jr. contends that

his father and Advanced Tenant have no ownership or managerial interest in either Dixie Dale or Single Point; however, it fails to address whether or not Advanced Tenant's clients and assets were transferred to Dixie Dale and/or Single Point. Douglas Aff. in Supp. of Dixie Dale at ¶5; Douglas Aff. in Supp. of Single Point at ¶5. Moreover, the plaintiffs have supplied a convincing example that Single Point is nothing other than an extension of the business operations of Advanced Tenant. Pls.' Opp'n, Ex. 3. (showing that Single Point executed a contract which merely transferred Advanced Tenant's contractual obligations and benefits from Advanced Tenant to Single Point). Specifically, Advanced Tenant had commenced work on a construction project for the Salvation Army as a subcontractor of Hitt Contracting Company ("Hitt"). Id. However, after the judgment was entered in this case, James Douglas, Jr., on behalf of Single Point, allegedly had Single Point assume Advanced Tenant's contract obligations with Hitt. Id. The same work was to be performed by both entities and no terms of the contract changed other than the name of the subcontractor. Id. This is sufficient to demonstrate that there may have been an attempt by the defendants to place their assets beyond the reach of the plaintiffs in a less than arms length transaction between companies operated by family members. See Alpern, 465 A.2d at 829. And the suspicion raised by this transaction is equally imputed to Dixie Dale considering the timing of its creation, the type of work it performs and the association James Douglas, Sr.'s son had with both Dixie Dale and Single Point. Therefore, due to the suspicion raised by the evidence presented by the plaintiffs, the Court concludes that it is permissible for them to obtain the requested discovery for both non-parties – Dixie Dale and Single Point.

        2. Information Sought is "Commercial Information"

As further support for not having to produce the information sought in the subpoena,

Single Point and Dixie Dale claim that the material sought through the subpoena is confidential and not relevant to the enforcement of the judgment against Advanced Tenant and James Douglas, Sr.[4]  Douglas Aff. in Supp. of Single Point at ¶6; Douglas Aff. in Supp. of Dixie Dale at ¶6.  Typically, Rule 45 protects only sensitive commercial information or trade secrets that, if disclosed, would impair the company's ability to compete in the marketplace.  Fed. R. Civ. P. 45 (c)(3)(B).  For example, in GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189 (D.D.C. 2003), the financial documents and billing records of a judgment debtor purportedly possessed by a law firm were deemed relevant to a judgment creditor's attempt to execute its judgment.  Id. at 194.  The records were found to be relevant because they were "reasonably calculated to . . . [provide the] judgment creditor an opportunity to enforce its judgment."  Id.  Similarly, disclosure here is appropriate because, as stated above, there is reasonable belief that inspection of the bank records by the plaintiffs could lead to the discovery of concealed assets of the judgment debtors.

Sometimes, however, even if the information is relevant to the discovery of concealed assets of a judgment debtor, courts will nonetheless afford protection to the information.  Courts have considered several factors, including to whom the information is being released and the content of the information when determining if the information should be protected.  For example, in In re Vitamins Antitrust Litig., the court focused on the fact that the proponent of the subpoena had requested trade secrets that were characterized as the "lifeblood of [the company's] well being" and therefore should be protected.  267 F. Supp. 2d 738, 741-42 (S.D. Ohio 2003).  Similarly, in Mannington Mills, the court quashed a subpoena for patent and other sensitive

---

[4] If Dixie Dale or Single Point believes that the subpoena should be modified to protect commercial information, they can submit a protective order to achieve that objective.

9

information based on the discovering party's failure to show both relevance and need. 206 F.R.D. at 532. In both of these cases, the information sought was critical to the financial health of the non-party's business and was being requested by a direct competitor. See id. at 531; In re Vitamins Antitrust Litig., 267 F. Supp. 2d at 741-42.

      Here, Single Point and Dixie Dale contend that the information sought by the plaintiffs is "commercial confidential information which has no relevance to the enforcement of the plaintiffs' judgment." Mot. to Quash at 2. Single Point and Dixie Dale bear the burden of showing that release of the information would impair their marketplace competitiveness. Mannington Mills, 206 F.R.D. at 528. In this regard, they argue that the subpoenaed information "pertain[s] to the operations of [Dixie Dale and Single Point]" and seeks the disclosure of their "business operations, contracts, customers and financial condition." Douglas Aff. in Supp. of Dixie Dale at ¶6; Douglas Aff. in Supp. of Single Point at ¶6. However, despite the nature of the information, the plaintiffs are former employees of Advanced Tenant, not direct competitors of either Dixie Dale or Single Point. Am. Compl. at ¶43. And, Dixie Dale and Single Point fail to show how the disclosure of the information will harm their ability to remain competitive. Instead, Dixie Dale and Single Point make vague claims about the nature of the commercial information the plaintiffs are seeking, while failing to specifically show how they will be harmed commercially if the information is released to the plaintiffs. Dixie Dale's Mot. to Quash at 8; Single Point's Mot. to Quash at 8. Accordingly, Single Point and Dixie Dale have failed to meet their burden of showing that the information sought by the plaintiffs is protected from disclosure by Rule 45.

### 3. Notice and Jurisdiction Arguments raised in response to Plaintiffs' reply

Single Point and Dixie Dale raise new arguments in their response to the plaintiffs' opposition regarding the jurisdiction of this court and the adequacy of the notice provided to the named defendants - Advanced Tenant and James Douglas, Sr.  Specifically, Single Point and Dixie Dale claim that this Court was not the proper court to issue the subpoenas because it required that documents be produced in another district (Maryland) and that the named defendants did not receive sufficient notice of the issuance of the subpoena.  Resp. to Pls.' Opp. at 1-3.  Ordinarily, courts decline to consider arguments raised for the first time in a reply to an opposition.  See Public Citizen Health Research Group v. Nat'l Institutes of Health, 209 F. Supp. 2d 37, 43-44 (D.D.C.).  However, one of the arguments challenges the jurisdiction of this Court to issue the subpoena, and a challenge of this nature cannot be dismissed without considering whether it has merit.  With respect to this challenge, Federal Rule of Civil Procedure 45(a)(2)(C) states that "[a] subpoena must [be] issue[d] . . . from the court for the district where the production or inspection is to be made."  Therefore, this Court could not issue a subpoena that required Wachovia to produce the documents in Maryland.  Accordingly, even though the plaintiffs are otherwise entitled to obtain the subpoenaed records, Single Point's and Dixie Dale's motions to quash the subpoenas must be granted.  The plaintiffs must therefore return all information and documents they received from Wachovia pursuant to the subpoena.[5]  Any other result would permit the plaintiffs to benefit from information and documents improperly

---

[5] Any copies of this information or documents must also be destroyed or returned to Wachovia along with the documents that were actually received.

produced to them in the District of Maryland.[6]

## IV. Conclusion

Based on the foregoing analysis, this Court will grant the motions of Dixie Dale's and Single Point's motions to quash requesting that the subpoena for their bank records be quashed.

**SO ORDERED** this 22nd day of March, 2006.[7]

REGGIE B WALTON<br>
United States District Court Judge

---

[6] Nothing precludes the plaintiffs from obtaining the same information and documents if done in compliance with Rule 45 of the Federal Rules of Civil Procedure. Until this occurs, the plaintiffs may not use the subpoenaed records for any purpose.

[7] An Order consistent with this Opinion is being issued contemporaneously herewith.